# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE TRUJILLO,<br><br>   Plaintiff,<br><br>   v.<br><br>VEJAR'S, INC. dba Vejar's Mexican Restaurant & Cocktail Lounge, et al.,<br><br>   Defendants. | Case No. 1:21-cv-01467-KES-SKO<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES & COSTS**<br><br>(Doc. 36) |

Before the Court is Plaintiff Jose Trujillo ("Plaintiff")'s motion for attorney's fees and costs. (Doc. 36). Defendants Vejar's, Inc., doing business as Vejar's Mexican Restaurant & Cocktail Lounge and Marketable Urban Investments, LLC ("Defendants") filed an opposition. (Doc. 38). The parties have consented to conduct the adjudication of this motion before the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c)(1), with any appeal to the Court of Appeals for the Ninth Circuit. (Docs. 51, 52). For the reasons given below, the Court will grant in part, Plaintiff's motion for attorney fees and costs.

## I.   BACKGROUND

Plaintiff filed this case on September 30, 2021, alleging that Defendants violated the Americans with Disabilities Act ("the ADA"), 42 U.S.C. §§ 12101 et seq.; California's Unruh Civil Rights Act ("the Unruh Act"), California Civil Code § 51, et seq.; and California Health and Safety Code §§ 19955(a), 19959. (Doc. 1 ("Comp.")). Specifically, Plaintiff alleged that he is substantially limited in his ability to walk and must use a wheelchair or prosthetic for mobility. (*Id.* at 2). On or around July 14, 2021, he alleges he visited Vejar's Mexican Restaurant & Cocktail Lounge ("the

1  facility") in Tulare, California, to have dinner, but encountered the following barriers: (1) he was
2  unable to find a designated accessible parking lot; (2) a lack of signage directing disabled persons
3  to an accessible entrance, with the back entrance having stairs and the path to the front entrance
4  from the back parking lot being uneven, excessively sloped, with height changes and gaps in the
5  walking surface, and a front entrance that is excessively sloped and lacking in clear level space to
6  maneuver and open the door; (3) a lack of clear space inside the front entrance to turn his wheelchair;
7  (4) a lack of sufficient knee and toe clearances at his table to accommodate his wheelchair; (5) a
8  lack of an accessible restroom; (6) a lack of accessible route to the outdoor bar patio; and (7) an
9  inaccessible transaction counter. (*Id.* at 3–4). Because of these barriers, he was deterred from
10 visiting the store, but alleges he would return once the barriers are removed. (*Id.* at 4). Plaintiff
11 sought injunctive and declaratory relief, statutory damages, and attorneys' fees and costs. (*Id.* at 9).
12 Plaintiff's complaint also stated that he would seek to amend his complaint to identify any additional
13 existing barriers to Plaintiff's access of the facility as it is "Plaintiff's intention to have all barriers
14 which exist at the Facility and relate to his disabilities removed to afford him full and equal access."
15 (*Id.*).

16      On December 13, 2021, Plaintiff requested an entry of default, and the Clerk entered a
17 default against Defendants the next day. (*See* Doc. 7). That entry of default was set aside after a
18 stipulation by the parties on January 10, 2022. (*See* Doc. 10). Defendants filed their answer on
19 January 24, 2022. (Doc. 12).

20      Prior to the Court entering a scheduling order, Plaintiff provided Defendants a proposed
21 "limited release"—limiting the released claims to those alleged in the Complaint rather than waiving
22 claims as to barriers Plaintiff did not presently know about. (*See* Doc. 36-2 at 5–6). This was
23 offered as an alternative to conducting an inspection to identify all barriers so that they could all be
24 addressed in the settlement agreement, in order to obtain a "general release." (Doc. 36-1 at 4).
25 Plaintiff also offered another alternative: Defendants could have the entire Facility inspected
26 themselves by a Certified Access Specialist ("CASp") so that all barriers could be identified and
27 addressed in the settlement agreement, again resulting in a general release of claims. (*Id.*)
28 Defendants considered the settlement—in particular the amount of attorney's fees—unreasonable.

1  (*See* Docs. 36-1 at 4; 38 at 3). Defendants countered with an initial offer of $3,000—which was
2  later increased to $4,000—in exchange for a *general* release, dismissal of the action with prejudice,
3  and a covenant not to sue, (Doc. 38), which Plaintiff rejected because he was unwilling to agree to
4  a general release without conducting a site inspection, (Doc. 36-1 at 4). Defendants' offer also
5  included a proposal that the parties submit the matter of attorney's fees to the court to resolve on a
6  motion. (Doc. 38 at 4). The parties also disagreed as to whether the property at issue was subject
7  to the standards for existing or new facilities. (*Id.*).

8  After the Court granted several continuances of the initial scheduling conference to allow
9  the parties to continue settlement discussions, on March 22, 2022, the Court held a scheduling
10 conference on November 29, 2022 and issued a scheduling order the following day. (Doc. 27).

11 On April 7, 2022, Defendants sent a letter to Plaintiff outlining their understanding of
12 settlement discussions. Defendants cited case law for the proposition that a party does not "prevail,"
13 and therefore is not entitled to attorney's fees, when they "fail[] to secure a judgment on the merits
14 or a court ordered consent decree but ha[ve] nonetheless achieved the desired result because the
15 lawsuit brought about a voluntary change in the defendant's conduct." (Doc. 38-3 at 3 (citing
16 *Buckhannon Bd. & Care Home, Inc. v. W.V. Dept. of Health & Hum. Res*, 532 U.S. 598 (2001)).
17 Defendants articulated their argument that the circumstances of the settlement negotiations in this
18 case and the prevailing party rule cited above amount to special circumstances that would support a
19 denial of Plaintiff's anticipated motion for attorney's fees. (*Id.*) The Defendants also lodged their
20 objection to any attorney's fees incurred after the date of the letter. (*Id.*)

21 On April 12, 2022, Plaintiff's expert inspected the subject property. (Doc. 36-2 at 7). On
22 December 21, 2022, Plaintiff filed a motion to amend the complaint to add reference to the additional
23 barriers found during the site inspection, (Doc. 28), which Defendants opposed, (Doc. 29). The
24 Court granted the motion on January 19, 2023. (Doc. 31). The next day, Plaintiff filed his First
25 Amended Complaint. (Doc. 32).

26 On February 23, 2023, the parties filed a stipulation of dismissal as they had agreed upon a
27 settlement. (Doc. 34). The Court granted the parties' stipulation to dismiss on March 7, 2023.
28 (Doc. 35). In that order, based on the parties' request, the Court retained jurisdiction to adjudicate

any subsequent motion for attorney's fees. (*See id.*).

On May 5, 2023, Plaintiff filed a motion for attorney's fees. (Doc. 36). Defendants untimely objected, (Doc. 38), and Plaintiff filed a reply, (Doc. 39). On September 13, 2024, the Court granted Defendants' ex parte application for an extension of time, finding that Defendants' seven-day delay was excusable neglect under Federal Rule of Civil Procedure 6(b)(1)(B). (Doc. 44). The Court vacated the hearing pursuant to Local Rule 230(g). (Doc. 37).

### I.   LEGAL STANDARDS

Under 42 U.S.C. § 12205, a party that prevails on an ADA claim may recover "a reasonable attorney's fee, including litigation expenses," at the Court's discretion. "[F]or a litigant to be a 'prevailing party' for the purposes of awarding attorneys' fees, he must meet two criteria: he must achieve a material alteration of the legal relationship of the parties, and that alteration must be judicially sanctioned." *P.N. v. Seattle Sch. Dist. No. 1*, 474 F.3d 1165, 1171 (9th Cir. 2007) (internal quotation marks omitted).

The lodestar method guides the determination of a reasonable fee. *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1176 (9th Cir. 2010). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996), *opinion amended on denial of reh'g*, 108 F.3d 981 (9th Cir. 1997).

The reasonable hourly rate is calculated by reference to the prevailing rate within the community for a similar type of work. *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

Regarding what may be reasonably billed for, "purely clerical or secretarial tasks should not be billed at a paralegal or [lawyer's] rate, regardless of who performs them." *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989). Thus, courts have discounted billing entries for "filing, transcript, and document organization time." *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009); *Jones v. Metropolitan Life Ins. Co.*, 845 F. Supp. 2d 1016, 1027 (N.D. Cal. 2012) (discounting time for

5

1  "filing or retrieving electronic court documents or copying").  Moreover, "[c]ounsel for the
2  prevailing party should make a good faith effort to exclude from a fee request hours that are
3  excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).
4  Further, district courts "must strike a balance between granting sufficient fees to attract qualified
5  counsel to civil rights cases and avoiding a windfall to counsel." *Moreno v. City of Sacramento*,
6  534 F.3d 1106, 1111 (9th Cir. 2008).  Accordingly, "[t]he number of hours to be compensated is
7  calculated by considering whether, in light of the circumstances, the time could reasonably have
8  been billed to a private client." *Id.*

9  "The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may
10 be used to adjust the lodestar amount upward or downward only in rare and exceptional cases,
11 supported by both specific evidence on the record and detailed findings by the lower courts that the
12 lodestar amount is unreasonably low or unreasonably high." *Van Gerwen v. Guarantee Mut. Life
13 Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000); *see also Shayler v. 1310 PCH, LLC*, 51 F.4th 1015, 1021–
14 22 (9th Cir. 2022) (approving adequately explained use of a downward multiplier to calculate
15 attorney fees in ADA case).

**II.  ANALYSIS**

17 Plaintiff's motion seeks to recover fees for one attorney, Tanya E. Moore, Esq., and two
18 paralegals, Whitney Law and Isaac Medrano.  (Doc. 36-1 at 8).  Ms. Moore seeks to recover 44
19 hours, Ms. Law seeks to recover 49.6 hours, and Mr. Medrano seeks to recover 7.5 hours, with a
20 combined total of 101.1 hour claimed for time spent in this case until May 5, 2023.  (*See* Doc. 36-3
21 at 23).  Plaintiff also seeks to recover an additional 13.9 hours for the total time spent by Ms. Moore
22 (3 hours) and Ms. Law (10.9) in drafting and filing the reply brief.  (Doc. 39-2 at 5).  In total, Plaintiff
23 seeks to recover $22,010 in fees for the 115 hours spent by Ms. Moore's firm in this case.  (*Id.*)
24 Plaintiff also contends that he is entitled to $4,518.74 in costs, which in significant part stem from
25 the $3,600 fee that he incurred to have a Certified Access Specialist ("CASp") inspect the store and
26 identify all barriers to Plaintiff's access.  (Doc. 36-2 at 4–6).

27 As a threshold matter, the Court finds that Plaintiff is entitled to recover attorney fees.  A
28 prevailing plaintiff under the ADA "should ordinarily recover an attorney's fees unless special

circumstance would render such an award unjust." *Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002) (quoting *Hensley*, 461 U.S. at 429). Despite the Defendants' arguments to the contrary, the Court is not convinced that there are such special circumstances here.

The Court's review of the record and papers submitted by the parties does not find anything special about the course of settlement negotiations warranting a finding of special circumstances and denial of attorney's fees. Defendants cite no authority in support of this argument and, moreover, the Court disagrees with Defendants framing that they "attempted to resolve this matter by making a settlement offer to plaintiff that fairly subsumes the relief available to plaintiff, at the outset and without protracted litigation." (Doc. 38 at 5). The record reflects that Defendants' early offers before the April 12, 2022, inspection included only a *general* release, while Plaintiff sought a *limited* releasee unless a site inspection identified all existing barriers. (*Compare* Doc. 38-3 at 2–3, *with* Doc. 36-2 at 5–6). Therefore, it is not the case that Defendants' settlement offer "fairly subsume[d] the relief available to plaintiff." (Doc. 38 at 5). Because the Court does not find special circumstances warranting a denial of the Plaintiff's motion, the Court will turn to the reasonableness of Plaintiff's request.

In assessing the reasonableness of Plaintiff's request, the Court first notes that the Defendants do not argue that Plaintiff's proposed hourly rates for his attorney, Ms. Moore, or the two paralegals who worked on Plaintiff's case, Whitney Law and Isaac Medrano, are unreasonable. (*See generally* Doc. 38). Rather, Defendants generally contend the amount of time Ms. Moore's firm seeks to recover is excessive, unreasonable, and unwarranted. (*See id.* at 6). Defendants also argue that Plaintiff should not be awarded his expert costs because Plaintiff never produced an expert report. (*Id.* at 9). The Court agrees with Defendants that a reduction in fees is warranted.

The Court acknowledges that while this was a relatively straightforward disability access case, Plaintiff is entitled to a reasonable amount in attorney fees. And Plaintiff is entitled to a reasonable amount in attorney fees for the time spent recovering those fees. However, the Court finds the Plaintiff's request for 115 hours and $4,518.74 to be excessive. For the reasons discussed below, the Court will award Plaintiff $11,005 in attorney fees for the 57.5 hours the Court finds were reasonably expended by Plaintiff's counsel and paralegals in prosecuting Plaintiff's case,

including bringing the instant fee motion.  The Court will also reduce Plaintiff's request for an award of expert witness costs.

### A. Hourly Rates

Plaintiff proposes $300 per hour as a reasonable hourly rate for Ms. Moore and $115 per hour for each paralegal.  (Doc. 56-1 at 6.)  Having reviewed the declaration of Ms. Moore (see Doc. 56-2 at 2–4), the Court finds that Plaintiff's proposed rates are consistent with the rates of comparable lawyers and paralegals in the Fresno Division, having previously awarded attorney's fees to Plaintiff at these rates.  *See, e.g., Gilbert v. HBA Enterprises, Inc.*, No. 1:21-CV-01358-JLT-SAB, 2022 WL 2663761, at *17 (E.D. Cal. July 11, 2022), *report and recommendation adopted*, 2022 WL 3327461 (E.D. Cal. Aug. 11, 2022) (concluding that $300 attorney rate and $115 paralegal rate for Ms. Moore's law firm was reasonable in ADA case).

### B. Hours Reasonably Expended

Next, the Court proceeds to the second part of the lodestar analysis—the hours claimed to have been reasonably expended in this case.

Plaintiff contends that the 115 hours billed by Ms. Moore's law firm is a reasonable amount of time given the delays in finalizing a settlement.  Defendants urge the Court to substantially reduce the total number of hours sought by Plaintiff to 22.10 hours.  (Doc. 38 at 9–10).  Based on the reasonable hourly rates, Defendants' proposed lodestar would amount to an award of $4,391.50.  According to Defendants, Ms. Moore reasonably spent 10 hours and Ms. Law and Mr. Medrano spent a combined 12.10 hours.  (*Id.*).  The reduced amount is based on Defendants' argument that the Court should disallow any fees and costs Plaintiff incurred after Defendants' April 7, 2022 letter objecting to attorney's fees.  (*Id.*).

After review of the parties' briefs and relevant billing records, the Court disagrees with Defendants that attorney's fees after Defendant's April 7, 2022, letter are inappropriate as there was not even a tentative agreement between the parties to resolve the merits of this case.  In particular, as discussed above, Defendants' offer of settlement included a general release, while Plaintiff was requesting a limited release if the case was to be resolved prior to a site inspection.  (*Compare* Doc. 38-3 at 2–3, *with* Doc. 36-2 at 5–6).  Based on the Court's review of the record, the date the parties

8

reached a settlement was on February 7, 2023. (*See* Doc. 36-2 at 7).

For the reasons discussed below, the Court will apply a 50% downward multiplier to the lodestar amount proposed by Plaintiff. The Court finds that a 50% decrease in the lodestar amount is reasonable due to numerous examples where Plaintiff's counsel billed an excessive amount of time for tasks that should have been performed more efficiently. The Court also finds that some of the litigation efforts were unnecessary or redundant.

1. <u>Investigation of Claims & Preparation / Filing of Complaint</u>

Ms. Moore spent 3.1 hours reviewing research regarding the parties, performing a conflict check, reviewing pre-filing investigation findings, and communications with her client between July 22, 2021, and October 2, 2021. (Doc. 36-3 at 2). Ms. Law spent .7 hours reviewing documents and communications from client, conducting additional information as to defendants, reviewing notes and photos from investigation, and drafting complaint on September 23, 2021.[1] (*Id.*)

Here, the total number of hours spent in pre-litigation planning is approximately twice the amount of time recovered by Ms. Moore's firm for identical tasks in other cases. *See Gilbert v. Mohamad*, No. 1:22-cv-00554-JLT-EPG, at *10 (E.D. Cal. May 2, 2023), *report and recommendation adopted*, 2023 WL 3724796 (E.D. Cal. May 30, 2023) (finding a total of 1.8 hours spent reviewing client communications, researching the identities of defendants, and reviewing notes and photos from the investigation to be reasonable). The time spent by Ms. Moore's firm during the initial stage of this case warrants a significant downward reduction. *See Pierce v. County of Orange*, 905 F.Supp.2d 1017, 1028 (C.D. Cal. 2012) (quoting *Lucas v. White*, 63 F.Supp.2d 1046 (N.D. Cal. 1999)) ("[T]ime reasonably spent on pre-complaint investigation, legal research and informal discovery relevant to developing the theory of the case is properly recoverable[.])" (emphasis added).

---

[1] The Court notes that Ms. Law's single entry of time as to "Category 1: Investigation of claims and preparation/filing of Complaint," (*see* Doc. 36-3 at 2), was entered using "block billing"—a time-keeping method by which billing statements lump together multiple tasks, rather than itemizing time expended on each separate task." *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007). With block billing, the Court cannot determine how much time was spent on particular tasks or evaluate whether the time spent on such tasks was reasonable. *See id.* at 948. More specifically here, the Court cannot separate out time spent on investigating Plaintiff's claims and time spent preparing the complaint. The Ninth Circuit has approved fee reductions for block billing. *Welch*, 480 F.3d at 948 (citing *Hensley*, 461 U.S. at 437 (holding that an application for attorney's fees must be supported by billing records that enable the reviewing court to easily identify the hours reasonably expended)).

9

Further, Ms. Moore spent 1 hour instructing Ms. Law regarding the drafting of the complaint, reviewing the draft complaint, and corresponding with the client regarding the complaint. (ECF No. 29-3, p. 3). Given Ms. Moore's experience with filing ADA complaints and because the complaint in this case was very similar to others filed in past cases, *see Trujillo v. Lakhani*, No. 1:17-CV-00056-LJO-SAB (E.D. Cal. Jan. 12, 2017) (Doc. 1), a significant downward reduction is also warranted, *see Trujillo v. Lakhani*, No. 1:17-CV-00056-LJO-SAB, 2017 WL 1831942, at *7 (E.D. Cal. May 8, 2017) ("The time billed is excessive and duplicative and .5 hours would be a reasonable amount of time for Ms. Moore to spend on preparing, researching, reviewing, and drafting the complaint in this action.").

        2.        <u>Preparation for & Attendance at the Scheduling Conference</u>

Ms. Moore recorded 3.4 hours and Ms. Law recorded 2.9 hours for tasks related to the Court's telephonic scheduling conference, including conferring with opposing counsel pursuant to Fed. R. Civ. P. 26(f), preparing stipulations to continue the scheduling conference, preparing joint scheduling reports, preparing for the conference, and attending the conference. (Doc. 36-3 at 4–5). The Court finds the amount of time spent preparing for the scheduling conference to be unreasonable, especially given the number of times Ms. Moore has appeared for scheduling conferences in similar ADA cases.

Ms. Moore has 24 years of litigation experience and over 12 years of ADA experience, (*see id.* at 2–3), and could have adequately prepared for the scheduling conferences in an hour. *See, e.g.*, *Block v. Christian*, No. 1:16-CV-00650-LJO-SKO, 2017 WL 5248402, at *6 (E.D. Cal. Nov. 13, 2017), *report and recommendation adopted*, 2017 WL 6350773 (E.D. Cal. Dec. 13, 2017) (reducing hours spent on preparing for a scheduling conference before this Court by experienced litigator with 12 years of ADA experience). Moreover, the joint scheduling reports filed by the parties contains largely boilerplate language that Ms. Moore has used in scheduling reports filed in other cases. (*Compare, e.g.*, Doc. 25, *with Trujillo v. Velez*, 1:21-cv-001469-SAB (E.D. Cal. Dec. 28, 2021) (Doc. 11). The amount of time spent on these tasks should therefore be substantially reduced.

//

//

3.   Site Inspection

Ms. Moore billed 11.2 hours of time related to the April 12, 2022, CASp site inspection performed by Plaintiff's consultant, including preparation (.3 hours), instructions for and review of paralegal draftings (.3 hours), communications with client (.3 hours), review of a court order (.1 hours), meet and confer efforts with opposing counsel (.6 hours), correspondence with opposing counsel (1.4 hours), travel time (6 hours), and attending the inspection (2 hours). (Doc. 56-3 at 15–16.) Additionally, Mr. Medrano and Ms. Law billed 2.1 hours related to the inspection, including correspondence with opposing counsel (1 hour), correspondence with expert (.5 hours), and drafting demands (.5 hours).   The Court finds that a significant downward departure is warranted.

First, Ms. Moore did not explain the benefit or substantive merit of her attendance at the inspection in this case. Thus, a substantial decrease in the hours claimed is appropriate. *See, e.g.*, *Gilbert v. Dollar Tree Stores, Inc.*, No. 1:21-CV-01640-EPG, 2023 WL 7736500, at *6 (E.D. Cal. Nov. 14, 2023) ("Plaintiff does not explain the benefit or substantive merit of Ms. Moore's attendance at a routine inspection under these circumstances.  Thus, a significant decrease in the hours claimed is appropriate."). Second, the Court finds that the other 5.1 hours billed related to the site inspection are also excessive and warrant a downward departure. *See, e.g.*, *Block v. Christian*, No. 116CV00650LJOSKO, 2017 WL 5248402, at *8 (E.D. Cal. Nov. 13, 2017), *report and recommendation adopted*, No. 116CV00650LJOSKO, 2017 WL 6350773 (E.D. Cal. Dec. 13, 2017) ("Ms. Moore spent 2.3 hours on preparation for and correspondence about the inspection, alone, when such routine work should have taken a fraction of that time for an attorney as experienced in these types of cases as Ms. Moore.").

4.   Amendment of Complaint

Next, the Court finds that the number of hours Ms. Moore billed in this case as to the amendment of the complaint is not reasonable given the nature of this case and Ms. Moore's experience in these types of actions. Ms. Moore states that between November 28 and 29, 2022, she and Ms. Law spent 2.3 hours preparing, reviewing, and revising the first amended complaint and stipulation. (Doc. 36-3 at 8). Based upon the Court's familiarity with the actions filed by Ms. Moore's firm in this court, the Court is aware that this is basically a form complaint and the only

11

substantive changes in the amended complaint were the addition of identified barriers to paragraph 11. (*Compare* Doc. 1, *with* Doc. 32). The Court finds 2.3 hours between Ms. Moore and Ms. Law excessive and warranting of a downward departure. *See Gutierrez v. Leng*, No. 1:14-CV-01027-WBS, 2015 WL 1498813, at *9 (E.D. Cal. Mar. 31, 2015) ("The Court finds that .5 hours of both Ms. Moore's and Ms. Law's time is sufficient to draft the first amended."), *report and recommendation adopted*, No. 114CV01027WBSSKO, 2015 WL 13667745 (E.D. Cal. May 8, 2015).

Additionally, Ms. Law spent 6.3 hours on preparing the motion to amend and related reply and Ms. Moore spent 2 hours for her review of the opposition to the motion to amend and preparation of reply. The Court finds this excessive, as the motion to amend was routine and nearly identical to motions to amend filed by Ms. Moore in other similar cases, (*compare* Doc. 28, *with Moore v. Singh*, No. 1:15-cv-00450-SKO (E.D. Cal. Sept. 16, 2025) (Doc. 18); *and Trujillo v. SSSC, Inc.*, 21-cv-01691-ADA-BAM (E.D. Cal. December 21, 2022) (Doc. 76)), and not legally complex. Therefore, this too warrants a downward departure. *See, e.g.*, *Kalani v. Nat'l Seating & Mobility, Inc.*, No. 2:13-CV-00061 JAM-CK, 2014 WL 3956669, at *3 (E.D. Cal. Aug. 13, 2014) ("the Court finds the hours expended on the motion to amend to be excessive. . . . [t]his motion was straightforward and did not involve complex legal issues."); *cf. Acosta v. Perez*, No. 119CV01224AWIEPG, 2021 WL 3910543, at *13 (E.D. Cal. Sept. 1, 2021) ("Other judges in this District have reduced Ms. Moore's time spent in preparing motions for default judgment where the motion filed is nearly identical to motions for default filed by Ms. Moore in other actions."), *report and recommendation adopted*, No. 119CV01224AWIEPG, 2021 WL 4461536 (E.D. Cal. Sept. 29, 2021).

### 5. Motion for Attorney's Fees

Ms. Moore billed 5.1 hours for her time spent drafting and editing the instant motion and associated reply. (Docs 36-3 at 23; 39-2 at 5). Ms. Law billed 33.2 hours on the same matters. (Docs 36-3 at 23; 39-2 at 5). The Court finds that 38.3 hours is quite excessive for the drafting of a routine motion for attorney's fees and associated reply. *See Block v. Christian*, No. 116CV00650LJOSKO, 2017 WL 5248402, at *6 (E.D. Cal. Nov. 13, 2017) (finding that 33.8 hours was excessive for the drafting of a motion for attorney's fees, especially in light of the attorney's

1  expertise in ADA matters, and finding that "5 hours [was] a reasonable amount of time for counsel
2  to have spent drafting, editing, and finalizing the [motion for attorney's fees] and accompanying
3  declaration), *report and recommendation adopted*, No. 116CV00650LJOSKO, 2017 WL 6350773
4  (E.D. Cal. Dec. 13, 2017).  Because the Court finds that the amount of time billed for the instant
5  motion and associated reply is excessive, the associated billing also warrants a downward departure.
6  //
7  //
8  //
9  //
10 //
11 //
12 //
13 //
14 //
15 //
16 //
17 //
18 //
19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

13

6. Communications with Plaintiff

Between July 24, 2021 and March 29, 2023, Ms. Moore, Ms. Law, and Mr. Medrano collectively spent 6.55 hours communicating with or reviewing communications with Plaintiff.

| Date | Biller | Memo | Time |
|---|---|---|---|
| 7/24/2021 | Tanya Moore | Letter to the client | 0.5 |
| 7/24/2021 | Tanya Moore | Reviewed communication from the client. | 0.1 |
| 8/29/2021 | Tanya Moore | Attention to client correspondence | 0.25 |
| 8/29/2021 | Tanya Moore | communications with the client re fact gathering | 0.2 |
| 10/2/2021 | Tanya Moore | Reviewed correspondence from the client of 9/27 re: complaint | 0.3 |
| 4/7/2022 | Tanya Moore | tc with the client | 0.35 |
| 11/28/2022 | Tanya Moore | Communications with the client in preparation of the FAC | 0.5 |
| 2/2/2022 | Tanya Moore | Communications with the client re [preparation of the SAR] | 0.25 |
| 2/14/2022 | Tanya Moore | Phone call with client re settlement | 0.5 |
| 2/14/2022 | Tanya Moore | Communications with the client and Mr. Aguilar re settlement | 0.6 |
| 6/27/2022 | Tanya Moore | Communications with the client re consultant's recommendations re injunctive and correspondence with the client re same | 0.6 |
| 8/11/2022 | Tanya Moore | TC w/ client re settlement agreement revisions | 0.5 |
| 1/20/2023 | Tanya Moore | TC w/Trujillo re revisions to the SAR | 0.6 |
| 1/31/2023 | Tanya Moore | Correspondence with Mr. Aguilar, client re final revisions in version 6 of the settlement agreement | 0.5 |
| 3/29/2023 | Tanya Moore | Preparation of correspondence to client with disbursement of damages payment | 0.1 |
| | | **Sum of Ms. Moore's Time** | **5.85** |
| 3/3/2023 | Whitney Law | Receive email from defense counsel with counter offer for fees and costs; forward to client; memo to file | 0.2 |
| | | **Sum of Ms. Law's Time** | **0.2** |
| 12/1/2022 | Isaac Medrano | Called client re deposition and depo prep | 0.2 |
| 2/4/2022 | Isaac Medrano | Correspondence to client with draft settlement agreement for review | 0.1 |
| 1/31/2023 | Isaac Medrano | Correspondences to client and defense counsel with final settlement agreement to sign | 0.2 |
| | | **Sum of Mr. Medrano's Time** | 0.5 |
| | | **TOTAL TIME** | 6.55 |

These calculations do not include the 6.9 hours of billed time entries that were in part based on communication with Plaintiff but were block billed such that the Court cannot discern how much time was actually spent communicating with or reviewing communication from Plaintiff.

14

| Date | Biller | Memo | Time |
|---|---|---|---|
| 9/27/2021 | Tanya Moore | Attention to final draft of the complaint and instructions to paralegal re same. Communications with the client re same. | 0.6 |
| 11/30/2022 | Tanya Moore | Preparation for depositions of the client and PMKs, instructions to IM and WL re depo notice preparation, topics, etc. Emails with IM re same, phone conference with WL re topics. | 0.5 |
| 3/8/2022 | Tanya Moore | Reviewed counter offer and email from Viviano. TC with client re same. | 0.5 |
| 9/8/2022 | Tanya Moore | Discussed counter offer with the client, instructions to WL re preparation of a response to Aguilar with counter demand. | 0.4 |
| 10/18/2022 | Tanya Moore | tc WL, tc client, obtained authority from the client, instructions to WL re convey | 0.5 |
| 11/10/2022 | Tanya Moore | tc with Mr. Aguilar, he wants to take Mr. Trujillo's deposition instead of settling the case. TC to Mr. Trujillo re same, instructions to WL re proceeding with the scheduling conference. | 0.4 |
| 1/31/2023 | Tanya Moore | Reviewed email from the opposing counsel re further revisions to the SAR, acceptance of certain terms, communications with the client re same, phone call with Mr. Aguilar to discuss further revisions and the stipulation that he requested to keep the settlement agreement confidential. Instructions to WL re preparation of the stipulation and further correspondence with the client and Mr. Aguilar to finalize. | 0.6 |
| 2/1/2023 | Tanya Moore | Reviewed communications from the client, instructions to IM re sending the final SAR to Mr. Aguilar. | 0.1 |
| | | **Sum of Ms. Moore's Time** | **3.6** |
| 9/23/2021 | Whitney Law | Review docs and communications from client; review info from initial investigation and conduct additional research to identify defendants and location for service; review notes and photos from investigation; draft substantive portions of complaint | 0.7 |
| 11/28/2022 | Whitney Law | Prepare First Amended Complaint including substantive paragraph 11, incorporating findings from Plaintiff's site inspection and identifying all barriers to his access and how they affect him; email to client re: same | 1.7 |
| 5/24/2022 | Whitney Law | Confer w/TM re documents we are waiting for from consultant; email to consultant re same | 0.2 |
| 8/11/2022 | Whitney Law | Receive and review email from Aguilar with redlines to settlement agreement; email to client re same | 0.2 |
| 1/20/2023 | Whitney Law | Confer w/TM re revisions to settlement agreement to provide for fee motion; revise agreement and send to Aguilar for approval; email to client re same | 0.5 |
| | | **Sum of Ms. Law's Time** | **3.3** |
| | | **TOTAL** | **6.9** |

Other courts have significantly reduced the amount of time claimed by Ms. Moore's firm for communications with Plaintiff, given Ms. Moore's history of representing Plaintiff in similar actions. *See, e.g.*, *Gilbert v. Gsarwar Inc.*, Case No. 2:21-cv-02023-MCE-JDP, 2022 WL 4245325, at *4 (E.D. Cal. Sep. 15, 2022), *report and recommendation adopted* 2022 WL 7101283 (reducing the time sought in default judgment from 2.4 hours to .50 hours). And courts routinely reduce the amount of time claimed by a party for that parties' use of block billing. *See, e.g.*, *Gauchat-Hargis v. Forest River, Inc.*, No. 2:11-CV-02737-KJM, 2013 WL 4828594, at *7 (E.D. Cal. Sept. 9, 2013); *see also Grouse River Outfitters, Ltd. V. Oracle Corp.*, 848 F. App'x 238, 245 (9th Cir. 2021) (We have recognized that attorneys' fees awards can be reduced where a party block bills "because block billing makes it more difficult to determine how much time was spent on particular activities." (quoting *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007))).

Here, the Court finds that some of the time spent by Ms. Moore, Ms. Law, and Mr. Medrano to communicate with Plaintiff was necessary due to Ms. Moore's obligations as counsel. However, some of the communication was substantively unnecessary and impermissibly block billed and, therefore, warrant a downward departure.

7. <u>CCDA Report</u>

On September 30, 2021 and March 1, 2023, Ms. Moore recorded .4 hours for "Attention to New Complaint CCDA report drafted by JM and approved for submission" and 1.0 hour preparing a "mandatory CCDA report." (Doc. 36-3 at 22.) Mr. Medrano also billed .5 hours for "review[ing] proof of service and busted addressed for service via CCDA portal" (.1 hours) "draft[ing] CCDA case resolution report" (.1 hours), and "review[ing] fully signed settlement agreement and prepar[ing] CCDA case resolution report for attorney fees motion" (.3 hours). (*Id.*) Finally, Ms. Law billed .2 hours for "[i]nstruction to IM re preparation of CCDA reporting and stipulation for dismissal." (*Id.*) As this Court has previously found, these tasks are "clerical in nature." *See Gilbert v. Gsarwar Inc.*, No. 2:21-CV-02032-MCE-JDP, 2022 WL 4245325, at *4 (E.D. Cal. Sept. 15, 2022), *report and recommendation adopted*, 2022 WL 7101283 (E.D. Cal. Oct. 12, 2022) (deducting 0.3 hours spent by a paralegal to prepare and submit a report "on CCDA portal."). Because these tasks were clerical and not subject to compensation, *see Missouri v. Jenkins by Agyei*,

16

491 U.S. 274, 288 n.10 (1989) (purely clerical tasks will not be compensated), here too the Court observes a need for a downward departure.

* * *

Based on these representative examples, the Court will apply a 50% downward multiplier to the number of hours claimed by Ms. Moore's firm. Accordingly, the Court finds the lodestar figures are as follows:

| Person | Hours[2] | Hourly Rate | Total |
|---|---|---|---|
| Tanya E. Moore | 23.65 | $300.00 | $7,095.00 |
| Whitney Law | 30.25 | $115.00 | $3,478.75 |
| Isaac Medrano | 3.75 | $115.00 | $431.25 |
| | | Total Fees | $11,005.00 |

Thus, the Court finds the total amount of reasonable attorneys' fees to be $11,005.00.

**8.   Costs**

Under the ADA, a court, in its discretion, can allow a prevailing party to recover reasonable attorneys' fees, including litigation expenses and costs. 42 U.S.C. § 12205. Litigation expenses "include items such as expert witness fees, travel expenses, etc." *Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002) (quoting 28 C.F.R. Pt. 35, App. A., Section-by-Section Analysis, § 35.175).

Plaintiff seeks $4,518.74 in costs. (Doc. 36-1 at 14.) Defendants object to the cost of Plaintiff's CASp inspection, in large part because Plaintiff did not provide Defendants with the report. (*See* Doc. 38 at 9.) Plaintiff counters that the "written memo" was "prepared for the purposes of litigation" and that he "has no obligation [to share it]." (Doc. 39).

At least one court has found it relevant in determining whether an award of costs associated with a that a plaintiff did not produce a report to defendant, despite the fact that the site inspection consultant's invoice referenced "report preparation." *See Gilbert v. Dollar Tree Stores, Inc.*, No. 1:21-CV-01640-EPG, 2023 WL 7736500, at *8 (E.D. Cal. Nov. 14, 2023). Here, as in *Gilbert*, the

---

[2] The hours in this column represent a 50% downward multiplier to the 47.3 hours billed by Ms. Moore, (*see* Docs. 36-1 at 15; 39 at 7), 60.5 hours billed by Ms. Law, (*see* Docs. 36-1 at 15; 39 at 7), and 7.5 hours billed by Mr. Medrano. These hours include the hours billed as reflected in the motion for attorney's fees, (*see* Doc. 36-1 at 15; *see also* Doc. 36-3 at 2–23), plus the additional hours billed for the preparation of the reply brief, (*see* Doc. 39 at 7; *see also* Doc. 39-2 at 5).

17

consultant's invoice references "report preparation" and Plaintiff did not provide any documentation of the expert's written findings. The distinction in this case is that Ms. Moore represents she had no obligation to turn the written findings over as it was "prepared for the purposes of litigation." (Doc. 39 at 4). The Court declines to resolve the matter of whether Plaintiff had an obligation to turn the report over, as Plaintiff represented that he would share the report if Defendant's paid for it. (*Id.*) Because Plaintiff now seeks costs from Defendants, which the Court will grant in part, the Court will order Plaintiff to provide the consultants written findings to Defendants.

Continuing its analysis as to whether Plaintiff's costs are reasonable, the Court observes that the invoice submitted in support of Plaintiff's expert witness fees is not itemized, (*see* Doc. 36-3 at 32), and does not permit the Court to determine whether the expenditures are reasonable. *See Hopson v. Singh*, No. 2:16-cv-3014-TLN-EFB, 2019 WL 4298040, at *4-5 (E.D. Cal. Sept. 11, 2019) (denying request for $2,162.50 in expert witness site inspection fees and declarations because invoice did not specify how much time the expert spent completing each inspection); *see also Johnson v. Yates*, No. 2:14-cv-1189-TLN-EFB, 2017 WL 3438737, at *3 (E.D. Cal. Aug. 10, 2017) (finding that "billing $200 for an ambiguous 'investigation' without providing supporting documents" was unreasonable). Moreover, the Court observes that the amount charged for the CASp site inspection, $3,600, appears to be excessive. (*See* Doc. 36-3 at 32). Indeed, one court recently accepted the prevailing market rate for such an inspection as $1,000–$1,500. *See Hernandez v. MRVS Enterprises Inc.*, No. 3:21-CV-06441-JSC, 2023 WL 8720138, at *8 (N.D. Cal. Dec. 18, 2023) (reducing $2,800 CASp inspection cost request to $1,500). Ms. Moore has previously sought costs of $1,295 for a CASp inspection. *See Acosta v. Perez*, No. 19-CV-01224 AWI EPG, 2021 WL 3910543, at *14 (E.D. Cal. Sept. 1, 2021), *report and recommendation adopted*, 2021 WL 4461536 (E.D. Cal. Sept. 29, 2021).

Because the invoice is not itemized and the amount sought is excessive considering the prevailing market rate, the Court will therefore award $1,500 as reasonable amount for the CASp site inspection. *See Hernandez*, 2023 WL 8720138, at *8.

As to the other costs—$194.93 for a pre-filing investigation, a $402 filing fee, $236.80 to effectuate service of process, and $85.01 for online legal and public records searches—the Court

finds those costs reasonable.

### III. CONCLUSION

Based on the foregoing, IT IS ORDERED that Plaintiff's motion for attorney fees and expert witness costs, (Doc. 36) is granted in part as follows:

1. Plaintiff is AWARDED $11,005.00 in attorney fees;
2. Plaintiff is AWARDED $2,418.74 in costs;
3. Plaintiff is ORDERED to provide Defendants with a copy of the CASp report by no later than seven (7) days after the filing of this order.

IT IS SO ORDERED.

Dated: **October 17, 2025**      /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE